Douglas LURNS, et al., Plaintiffs,

Arthur Thomas, Plaintiff-Intervenor,

v.

RUSSELL CORPORATION, Defendant.

Civ. A. No. 79–113–E.

United States District Court,
M.D. Alabama, E.D.

Dec. 6, 1984.

O. Williams Adams, III, Birmingham, Ala., Henry Sanders, Rose M. Sanders, Chestnut, Sanders, Sanders & Turner, Selma, Ala., for plaintiffs.

Chris Mitchell and Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, Ala., for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

This class action lawsuit challenging racial discrimination in employment is before the court on the parties' joint request for approval of a consent decree. For reasons that follow, the court is of the opinion that the consent decree should be approved.*

### I.

Over five years ago, present and former black employees of Russell Corporation brought this action pursuant to 42 U.S.C.A. §§ 2000e through 2000e–17 (otherwise known as Title VII of the Civil Rights Act of 1964, as amended) and 42 U.S.C.A.

* See Appendix A.

§ 1981, alleging race discrimination in a wide range of the company's employment practices in Tallapoosa County, Alabama. The court certified this as a class action on June 24, 1983. Thereafter, the court learned that the parties had reached a settlement and ordered that they submit the necessary papers.

In early September 1984, the parties submitted a proposed consent decree fully settling all matters of dispute, except the claims of two of the named plaintiffs. The two named plaintiffs opted out of the settlement and their individual claims are set for trial at a later date. The court preliminarily approved the consent decree, pending notice of the proposed settlement to the plaintiff class members and a hearing in this court regarding any objections to the decree.

The parties published notice of the terms of the settlement in the local newspaper and they posted such notice throughout the company mills in Tallapoosa County. The plaintiffs' counsel also conducted an open meeting for all class members to review the consent decree. Several hundred attended this meeting.

On November 30, 1984, the court held a hearing to consider any objections to the proposed consent decree. Two objections were presented. The first objection, adopted in writing by thirty-six plaintiff class members, concerned the decree's provision for posting of notices of job openings in Russell Corporation's mills where class members are employed. Those objecting wished notices to be posted at all mills, not just at the central personnel office and where a given job was available, as the decree provides. The second objection, presented by one plaintiff class member, challenged many if not all of the decree's provisions. The objector considered inadequate the amount of backpay to be distributed to class members. He also contended that Russell Corporation's undertakings to assist black-owned banks, businesses and insurance companies were insufficient and asserted that the company should provide scholarships without the compulsion of the decree.

## II.

Courts have stated many times that voluntary settlement is the preferred means of resolving class action employment discrimination disputes. *See, e.g., Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir.1983); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1215 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). However, it is also well recognized that the class action "settlement process is more susceptible than adversarial adjudications to certain types of abuse. The interests of lawyer and class may diverge, as may the interest of different members of the class, and certain interests may be wrongfully compromised, betrayed, or 'sold out' without drawing the attention of the court." *Pettway,* 576 F.2d at 1169. Therefore, the "[p]roponents of class action settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Holmes,* 706 F.2d at 1147.

■ In assessing the fairness, adequacy and reasonableness of a proposed settlement, a court should consider many factors. Among these is whether the settlement favors one or more named plaintiffs or any other identifiable minority of the plaintiff class. Although there is no rule that a settlement benefit all class members equally, a disparate distribution favoring the named plaintiffs or some minority within the class requires that the court carefully scrutinize whether the settlement on the whole is fair to all members. *Holmes,* 706 F.2d at 1148. In the present case, two of the named plaintiffs have been allowed to opt out of the settlement, and a third is to receive $2000 in full settlement of all his claims against the company. None of these three named plaintiffs has a present job with the company. The difference in treatment of these three named plaintiffs does not warrant disapproval of the settlement.

■ Difference in treatment may be proper as long as it is based on legitimate considerations. *Holmes,* 706 F.2d at 1148.

Such considerations are present here. The proposed consent decree provides for broad and substantial benefits to the class members. These benefits include, among other things, a backpay fund, scholarships, a minority vendor program, and substantially increased opportunities for hiring, training, transfer, and promotion. The two named plaintiffs who opted out have decided to run the risk of litigation rather than receive the certain benefits of settlement; and the third named plaintiff has given up his claim of a job in return for a sum certain. But more importantly, it is apparent from the actions of the plaintiff class members that these three named plaintiffs are not receiving unfair favor. None of the plaintiff class members has objected to or sought treatment similar to what the three named plaintiffs are to receive.

■ Another factor to be considered in assessing the fairness, adequacy and reasonableness of the settlement is the number of objectors. *Pettway*, 576 F.2d at 1215. Clearly, only a very small percentage in the present case has objected to the consent decree. Since their objections do not concern the allocation of settlement benefits among class members, "[t]he decision to approve this settlement thus may appropriately be described as an intrinsically 'class' decision in which majority sentiments should be given great weight." *Id.* at 1217.

■ A court should also consider "the judgment of experienced counsel for the parties." *Pettway*, 576 F.2d at 1215. Counsel here are well acquainted with this litigation, having pursued lengthy settlement negotiations, as well as detailed discovery. They have conducted a hearing on class certification and prepared for trial. They are also experienced with other class-action litigation of this kind. The court thus credits their joint representation that the consent decree constitutes a fair and reasonable outcome of this lawsuit.

■ Finally, the court should consider the nature and scope of the objections filed. Here, if the company were to meet the needs of those objecting, the members of the plaintiff class would receive more benefits. However, the essence of settlement is compromise. "The parties to litigation may by compromise and settlement not only save the time, expense, and psychological toll but also avert the inevitable risk of litigation." *United States v. City of Miami, Fla.*, 664 F.2d 435, 439 (5th Cir.1981) (Former 5th en banc). With these considerations as well as the others previously mentioned in mind, this court finds that, even in the face of the objections presented, the consent decree is a fair, adequate and reasonable settlement of this lawsuit.

Accordingly, it is ORDERED that the objections to the consent decree be and they are hereby overruled; and that the proposed consent decree be and it is hereby approved.

## APPENDIX A

DOUGLAS LURNS, et al., Plaintiffs,

v.

RUSSELL CORPORATION, Defendant.

### CONSENT DECREE

#### I.

#### PURPOSE AND SCOPE

The purpose of this decree is to resolve all issues which have been or could have been included within the scope of Civil Action No. 79–113–E. This decree covers and resolves all claims of racial discrimination in hiring, assignments, pay, promotion, transfer, discipline, or discharge by any past or present employee or applicant at any Russell Corporation plant in Tallapoosa County, except for the individual and personal claims of plaintiffs Douglas Lurns and Henry Hall. The decree covers and resolves such claims of racial discrimination based on the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*), and any other federal or state statute, executive order, or regulation prohibiting racial discrimination in employment. By this decree the parties have sought to provide an equitable means of resolving contested issues so as to provide redress

for all alleged past discrimination as well as to assure expanded training opportunities for minority employees and fair and nondiscriminatory employment practices in the future.

The central purpose of this decree is to provide this relief and these opportunities without continued resort to costly and time consuming litigation. The continuation of this litigation would be extremely expensive for all parties, and based on the other similar cases this litigation could reasonably be expected to continue for many years before issues of liability or relief are finally resolved. Thus, all parties share a common interest in resolving this litigation now as provided for herein.

## II.

## JURISDICTION

The Court has jurisdiction under both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e [et seq.], and the Civil Rights Act of 1866, 42 U.S.C. § 1981, through 28 U.S.C. § 1343.

## III.

## PARTIES

Plaintiffs Douglas Lurns, Henry Hall, and Lillie Faye Hall are former employees of defendant Russell Corporation and allege that they were discharged because of their race. Additionally, plaintiff Lillie Faye Hall alleges that she was discharged in retaliation for activities engaged in by her husband, Henry Hall, in opposing practices made unlawful by Title VII, and plaintiff Henry Hall alleges that he was denied a promotion because of his race. Plaintiff-Intervenor Arthur Thomas alleges that he was not hired because of his race. The class consists of all black persons who have been employed by Russell Corporation or who have applied for employment with Russell Corporation in its Tallapoosa County plants since January 1, 1978. Defendant Russell Corporation is an Alabama Corporation with its headquarters and principal place of business in Alexander City, Alabama within Tallapoosa County. Defendant is an employer within the meaning of Title VII. Named plaintiffs Douglas Lurns

and Henry Hall have elected to proceed with their individual and personal claims of discrimination. Plaintiff Lillie Faye Hall has met with counsel for plaintiffs and for the class on numerous occasions. On at least four such occasions within the past three months plaintiff Lillie Faye Hall has met with counsel for plaintiffs along with plaintiffs Douglas Lurns and Henry Hall. Lillie Faye Hall has been counseled and understands that her claims of discrimination are waived by this decree and that she will not receive any relief in the form of back pay or reinstatement due to the facts of her individual case.

## IV.

## DEFENDANT'S CONSENT AND NONADMISSION OF LIABILITY

In accordance with the purposes of the decree as expressed in paragraph I, defendant Russell Corporation freely consents to the entry of this decree and agrees to the relief provided for herein. By doing so defendant does not admit or imply that it has in any way violated any federal or state statute, executive order, regulation or ruling. Rather, the entry of this decree is the most expeditious and cost effective method of resolving all claims between the parties by providing the maximum practicable relief to the plaintiffs and the class consistent with limiting the litigation expenses of both plaintiffs and defendant.

## V.

## SUMMARY OF THE EVIDENCE

The class issues include allegations of discrimination in hiring, assignments, transfer, promotion and discharge. The evidence reflects that since January 1, 1978, black representation in defendant's Tallapoosa County work force has equaled or exceeded black representation in the Tallapoosa County SMSA work force. Specifically, from 1978 through 1983, black persons constituted approximately 29.2% of all persons hired. Based on 1970 census data, black representation in the Tallapoosa

County SMSA work force was approximately 28%. The same census data for 1980 reflects black representation of approximately 22.3%. Although there is no underrepresentation of blacks in the work force generally, the evidence reflects an underrepresentation of blacks in clerical, technical, and professional jobs which are frequently filled by outside hiring. Discovery failed to reveal, however, any identifiable black applicants with technical and professional skills. To the extent that the evidence showed an underrepresentation of blacks in clerical jobs, the evidence also reflects no significant pay disparity between clerical jobs and the nonclerical hourly jobs to which blacks have been assigned.

As of 1983, the average earnings of black and white employees with equivalent seniority are not significantly different. Stated alternatively, black and white employees hired at or about the same time show no significant difference in average earnings for most of the years analyzed. The evidence does show an underrepresentation of black employees in supervisory jobs in defendant's plants in Tallapoosa County in light of the extent of black representation in defendant's Tallapoosa County work force.

The available statistical evidence with regard to discharges shows little disparity between the discharge rates for black and white employees when the statistics are adjusted for "absenteeism" discharges which are largely self determined by the employee. Even without adjusting for absenteeism discharges, the available documentary evidence tends to show that the difference in discharge rates for black employees and white employees is relatively small.

Because of the size of defendant's Tallapoosa County work force (approximately 6,000 persons employed at any point in time since 1978) and due in part to defendant's informal decision making and record keeping system, it would be extremely difficult to identify any specific victims of alleged discrimination. The total number of black persons employed by defendant in Tallapoosa County from 1978 to the present is substantially in excess of two thousand. Several thousand black persons have applied for employment during this time, and the total number of black employees discharged since 1978 is in excess of eight hundred. The number of persons promoted or transferred and the race of those persons is unknown because defendant did not keep accurate records of promotions and transfers.

Because of the large number of persons involved, and due to defendant's lack of records, it would be difficult to identify specific victims of alleged class discrimination. To do so would require the Court to involve itself in a quagmire of individual and subjective determinations that would extend these proceedings contrary to the purpose of the decree and the interests of the parties and the class.

The remedies provided for herein—including changes in hiring procedures, hiring goals for certain types of jobs, special transfer opportunities, promotion and training goals for certain jobs, new promotion and discharge procedures, special supervisory skills training programs with training and promotion bonuses, scholarship programs for black employees and their children, set asides and minority vendor programs, back pay, and other similar remedies—are intended to remedy all types of alleged discrimination affecting the class as certified by the Court, including alleged discrimination in hiring, assignment, transfer, promotion, discipline and discharge.

## VI.

### GENERAL INJUNCTIVE RELIEF

Defendant is hereby enjoined and restrained from discrimination against black applicants or employees in hiring, initial job assignment, transfers, promotion, discipline or discharge. Black applicants and employees will be treated the same as similarly situated white applicants and employees for all employment purposes, except where a specific provision of this decree requires otherwise.

## VII.

### HIRING AND INITIAL JOB ASSIGNMENTS

In order to better assure that black applicants are given full and equal consideration for available vacancies in defendant's plants in Tallapoosa County, defendant agrees that there should be black representation on its interviewing staff. Accordingly, defendant agrees that it will maintain black representation on its interviewing staff at a level equal to black representation in defendant's Tallapoosa County work force. In measuring defendant's compliance with this commitment, no question of compliance shall be raised if at least twenty-five percent (25%) of defendant's full time interviewers are black.

Defendant agrees that the daily vacancy list will be posted at conspicuous places so as to be available for inspection and review by all applicants prior to completing an application. The list will inform all applicants that if they do not wish to apply for any particular job, they may apply for any job available. Defendant's application form will be modified to provide a space in which an applicant may indicate "Type of Work Desired." Applicants who indicate that they desire to be considered for clerical, technical or professional jobs will be referred to the appropriate interviewer. The identity of the interviewer will be noted on the application of all persons interviewed.

All interviewers shall receive training designed to familiarize them with the job duties, qualifications, and requirements of the jobs for which they are interviewing. Interviewers shall also receive sensitivity training in equal employment opportunity with emphasis on referring qualified applicants for all job vacancies without regard to race. Special efforts will be made to refer and hire qualified black applicants for available vacancies in clerical, technical and professional jobs. To that end the following goals are hereby established for black representation in these job groups: Clerical—8.0%; Technical—10.0%; Professional—7.0%; Craft (other than mechanics)—17.0%. These goals are based on the availability of qualified black persons possessing the requisite skills for these jobs as reported by *Report 3: Social Indicators For Planning And Evaluation*, 1980 Census of Population for Tallapoosa County, Alabama compiled by the State of Alabama Department of Industrial Relations based on data provided by the U.S. Department of Labor, Employment and Training Administration. The goals shall be revised to reflect more accurate availability data should the report be revised. To assist in achieving these goals defendant will make special efforts to recruit qualified black applicants for technical and professional jobs at predominately black institutions such as Tuskegee Institute, Talladega College, and Alabama State University and other state supported universities that have a significant black student enrollment. Progress towards attaining these goals shall be reported as provided for in Section XVI (Reporting Requirements).

Defendant also agrees to set a hiring goal of 10% in filling vacancies for officials' and managers' jobs where outside hiring is used to fill these vacancies. It is expected that attainment of this goal will be linked to the scholarship program provided for herein for predominately black institutions of higher learning.

Defendant agrees to engage in college recruiting at predominantly black colleges and to include at least one black employee on its recruiting staff. Defendant agrees to a goal that 22% of its summer hires will be black.

## VIII.

### TRANSFERS

Defendant will promulgate a written transfer policy that will govern the terms and conditions under which employees will be allowed to transfer from one plant to another. This policy shall be consistently enforced without regard to race. Employees who are allowed to transfer from one plant to another at the employee's request shall not forfeit their company seniority for purposes of accrual of benefits but shall

forfeit their accumulated plant seniority for purposes of competitive bidding and promotion. Employees who transfer from one plant to another at the request of defendant shall not forfeit their company or plant seniority.

Employees in plants 1, 9 and Dadeville who complete three years of service as a sewing machine operator shall be allowed to bid for vacancies in nonsewing jobs within their departments. Vacancies in these nonsewing jobs will be awarded on the basis of plant seniority from among the qualified bidders.

Black employees in plant # 5 shall be given a one time opportunity to sign up for transfer to any plant for any job for which they are qualified or can become qualified through on the job training within a reasonable time. Those who elect to transfer under this one time opportunity shall receive the next vacancy in the job to which they elect to be transferred, provided that they have more company seniority than the most senior person bidding for the vacancy under the job posting and bidding system. Employees transferring under this provision shall retain all accumulated seniority for all purposes.

Defendant agrees that it will give black employees in Tallapoosa County a one-time opportunity to apply for consideration to be transferred to clerical jobs. Defendant will review the qualifications of those who apply and will establish a list of persons qualified to transfer to available clerical vacancies. Persons on this list shall be entitled to transfer to available vacancies on the basis of their company seniority. Defendant agrees that until such time as the goal for clerical representation set in paragraph VI is met, at least 25% of all clerical vacancies will be filled from this transfer list. Once the goal for clerical representation set in paragraph VI is met, this special transfer right shall end and the terms and conditions of defendant's normal transfer policies will apply to requests for transfer to clerical jobs.

## IX.

### PROMOTIONS—HOURLY JOBS

Defendant agrees that 33⅓% of the employees selected to attend new fixer training schools (not fixer retraining) will be black.

Defendant agrees that qualified black employees shall be promoted to fill at least one of every three vacancies in mechanic's jobs until such time as black representation in such jobs equals 25%.

Defendant further agrees that the job posting and bidding system will be implemented in all plants in Tallapoosa County.

## X.

### PROMOTIONS—SUPERVISORY JOBS

Defendant agrees that it will develop written criteria and qualifications for promotion to each first level supervisory job in its plants in Tallapoosa County. In developing these criteria and qualifications defendant will take into consideration such factors as disciplinary and attendance record, technical or job knowledge, and leadership ability. Disciplinary record shall not be taken into account if the employee has received no disciplinary warnings in the twelve-month period preceding the employee's application for a supervisory vacancy. The criteria and qualifications for promotion shall be posted on all plant bulletin boards for all first level supervisory jobs within each plant. Periodically, and at least semiannually, defendant will post notices advising all employees of actual or anticipated first level supervisory vacancies within the plant. Interested employees within the plant shall be given an opportunity to apply for any first level supervisory vacancies. In applying for these jobs the employees will be given an opportunity to state in writing their qualifications and experience which they feel qualify them for promotion. When vacancies occur in first level supervisory jobs and when defendant determines that the vacancy shall be filled by promotion from within the ranks of hourly employees in the plant, the selection shall be made by choos-

ing the best qualified person from among those who have applied for the vacancy. Each applicant shall be rated on the criteria and qualifications for the job in question; and the selection shall be made without regard to race, subject to the requirements of paragraph XI of this decree. The ratings and selection decision shall be made by a committee of three persons, including a representative of the personnel department, a supervisory or managerial employee from within the plant where the vacancy occurs, and the operating vice president of the area where the vacancy occurs or his designee. Until such time as black representation in first level supervisory jobs equals 25%, each selection committee shall contain a black representative.

## XI.

### DISCIPLINE AND DISCHARGE

In administering its discipline and discharge policy defendant shall follow the following steps:

(1) When any supervisor feels that the penalty of discharge is appropriate, the supervisor shall so notify the affected employee and at the supervisor's discretion either suspend the employee or allow the employee to continue working pending investigation of the circumstances surrounding the employee's actions.

(2) The supervisor shall report the matter to the personnel department. A representative of the personnel department shall conduct a preliminary investigation and thereafter shall meet with the employee. The representative of the personnel department shall inform the employee of the nature of the charges and shall give the employee an opportunity to present any facts, including the names of any witnesses, in the employee's defense.

(3) The representative of the personnel department shall then conduct such an investigation as is necessary to determine the merit of the charges against the employee, and shall decide the appropriate discipline, if any, for the offense. If the employee is dissatisfied

with the decision, the employee can appeal to the Review Board.

(4) In the event of an appeal, the information and evidence developed in the investigation shall be presented to a Review Board consisting of a representative from the personnel department (other than the person investigating the matter), a representative from the management of the plant where the employee worked (other than the accusing supervisor) and the operating vice president of the area or his designee. Each Review Board shall contain a black representative.

(5) The employee shall be entitled to appear before the Review Board and make any statement on his behalf but may not otherwise participate in the proceedings of the Review Board.

(6) The Review Board shall consider:

(a) whether the employee had adequate notice that this conduct, if engaged in, would result in discipline;

(b) the facts of this particular case, including mitigating or extenuating circumstances;

(c) the level of responsibility associated with the employee's job, i.e., the less responsible the employee's job the more specific the offense should be to sustain discipline;

(d) the employee's length of service;

(e) action taken in similar past cases.

The Review Board shall render its decision based on these factors; and where the decision is to discharge an employee, the Review Board shall give a brief written statement of the reasons for its decision.

## XII.

### SUPERVISORY SKILLS TRAINING COURSE TRAINING BONUS—PROMOTION BONUS

Defendant will sponsor and fund a supervisory skills training program to be conducted by the Alexander City Junior College in conjunction with Tuskegee Institute. The course shall consist of instruction in management principles (such as mo-

tivation, leadership, problem-solving), employee relations and EEO, industrial engineering, business economics, and orientation in Russell Corporation policies and operations. Entrance to the program shall be limited to between twenty and twenty-five employees per class with no less than two classes per year. At least fifteen vacancies in each class will be reserved for qualified black employees, to be selected by the program administrator from among competing applicants based on qualifications, seniority, and apportionment among defendant's plants. Other factors being relatively equal, the program administrator shall give preference to applicants who were hired prior to January 1, 1978. All employees will be notified of the existence of the program and of the fact that satisfactory completion of the program will entitle the employee to preferential consideration for promotion to supervisory vacancies. Defendant will pay for all expenses incurred for tuition, books, supplies, or other required course materials for black employees attending the program, provided that any employee who voluntarily drops out of the program prior to completion shall repay defendant for all monies expended on the employee's behalf. Defendant may make reasonable deductions from the employee's pay to recover these monies. Black employees who successfully complete the training program shall be entitled to preferential consideration for vacancies filled in accordance with the procedures set forth in paragraph IX of this decree. For the first year after final approval of this decree, qualified black employees shall be promoted to fill at least one of every three such vacancies. Thereafter qualified black employees shall be promoted to fill at least one of every two such vacancies until such time as black representation in first level supervisory jobs equals 25%. Black employees hired prior to January 1, 1978 who successfully complete the training program between the date of this decree and the date that black representation in first level supervisory jobs equals 25% shall be entitled to a training bonus of $500.00 upon completion of the program and $500.00 to be paid six months later provided that the

employee is still employed with defendant. Black employees hired since January 1, 1978 who successfully complete the training program between the date of this decree and the date that black representation in first level supervisory jobs equals 25% shall be entitled to a training bonus of $175.00 upon completion of the program and $175.00 to be paid six months later provided that the employee is still employed with defendant. Black employees promoted to first level supervisory jobs between January 1, 1978 and the date that black representation in first level supervisory jobs equals 25% shall be entitled to a promotion bonus of $1,000.00 to be paid after six months of satisfactory performance in the supervisory job. Black employees hired prior to January 1, 1978 and who successfully complete the supervisory training program but who have not been promoted to a supervisory job within three years after completion of the program shall receive $1,000.00 at the end of the three year period. Defendant's obligation to pay tuition and expense reimbursements and to pay promotion and training bonuses shall cease whenever black representation in first level supervisory jobs equals 25% or whenever the monies spent by defendant under this section equals $700,000.00, whichever comes first.

## XIII.

## MINORITY VENDOR PROGRAM

### (SET ASIDES)

The remedies set forth below take the form of "set asides" for minority business enterprises, and this form of relief is based on the assumption that black persons unlawfully terminated or rejected for hire are likely to be either presently working for minority business enterprises or are potential applicants for employment with such enterprises. Thus, by providing expanded business opportunities for minority business enterprises through "set asides", defendant is directly and indirectly expanding and promoting the employment opportunities of black persons no longer on its pay-

roll, including terminated employees and rejected applicants.

Defendant will establish an ongoing relationship with the State of Alabama's agency for developing minority business enterprises. The purpose of this relationship is to establish a minority vendor's program under which defendant will purchase 20% of its purchases in each of the following categories—(1) plant supplies; (2) construction materials; and (3) office supplies—from minority business enterprises that can supply these services and supplies at a price, quantity, quality, service and delivery time otherwise available to defendant.

Defendant agrees that it will have a banking relationship of one million dollars with an Alabama bank having substantial or majority ownership by minorities. This relationship may include a combination of loans and deposits.

Defendant agrees that at least ten million dollars of insurance coverage under its group life insurance program will be placed with minority firms in Alabama.

Defendant agrees that it will contribute $250,000.00 towards establishment of a MESBIC (Minority Enterprise Small Business Investment Corporation) program or similar privately administered program. The MESBIC will be governed by a Board of Directors that shall have black representation.

In meeting its commitments under this paragraph of the decree defendant need not pay more for the goods or services in question than the price available to defendant from other sources, but price being equal, defendant will give preference in the purchase of these goods and services to minority business enterprises to the extent stated. Defendant further agrees that there will be minority participation in the establishment and implementation of this program.

### XIV.

### SCHOLARSHIP PROGRAM

Defendant agrees that it will commit to provide $100,000.00 per year for the next ten years for scholarships to deserving students at Tuskegee Institute, Talladega College, Selma University and Alabama State University. Black employees, their spouses or their children shall be given preference in awarding these scholarships, which shall be known as Russell Corporation Scholarships. Each scholarship recipient shall receive a maximum of $1,500.00 per year to be applied towards expenses relating to tuition, books, and necessary course work supplies. Defendant agrees that it will offer summer employment to ten students per year from these institutions in order to encourage students from these institutions to accept full time employment with defendant upon graduation.

Defendant agrees that it will establish a Cooperative Program with Southern Tech in apparel engineering. Under this program employees will work with defendant for six months and attend Southern Tech for six months. At least 25% of the employees selected for this program shall be black.

### XV

### BACK PAY

Defendant agrees to contribute $250,000.00 to a back pay fund to be distributed among present and former black employees on the following basis: Each black employee or former employee who (1) has at least two full years of service and (2) has at least one full year of continuous service since January 1, 1978 shall be entitled to receive back pay from the fund. Each eligible person shall receive one credit point for each full month of service with defendant during their last continuous, unbroken tenure with defendant. The total number of points so awarded will be divided into $250,000.00 to determine the monetary value of each credit point. To be eligible for an award of back pay class members must file a claim form with the clerk of the Court on a form approved by the parties and the Court. The Court will set a deadline for filing back pay claims. Upon expiration of the deadline defendant shall review the claims to determine whether all claimants meet the eligibility requirements

set forth above. Defendant will then prepare and deliver back pay checks to each eligible person in the back pay class as defined above. Any returned or unclaimed checks shall be retained by defendant for a period of two years. Any monies remaining in the back pay fund at the end of two years shall be contributed to the scholarship program in addition to the monies set forth in paragraph XIII.

## XVI.

### REPORTING REQUIREMENTS

At six months and one year after final approval of this decree, defendant shall prepare a report stating in detail the steps taken by defendant to implement the provisions of this decree. Each year thereafter for four (4) years defendant will prepare a report stating the actions it has taken towards achieving each goal set forth in the decree, including all monies spent for scholarships, set-asides, training courses, and promotion bonuses. The report shall cover transfers, promotions, and discharges. All reports shall be submitted to counsel for plaintiffs and the class.

In addition, an annual audit shall be performed each year for four years following implementation of the decree. The audit shall be conducted by a minority consulting firm retained by defendant for this purpose. The audit shall consist of a review of the overall EEO posture of defendant, and upon completion of the audit, the consulting firm shall prepare a written report, a copy of which shall be provided to counsel for plaintiffs.

## XVII.

### DURATION

This decree shall continue in full force and effect until dissolved by further order of the Court.

## XVIII.

### NOTICE TO CLASS MEMBERS

Copies of this decree and any orders preliminarily approving the decree shall be posted on the bulletin boards of each plant in Tallapoosa County for at least one month. Copies of the decree and any orders preliminarily approving the decree shall also be published in the *Alexander City Outlook* for four consecutive weeks.

## XIX

### NAMED PLAINTIFF RELIEF

Plaintiffs Henry Hall and Douglas Lurns have elected to litigate their personal and individual claims of discrimination and thereby to pursue whatever relief is available to them. Defendant shall pay plaintiff Arthur Thomas the sum of $2,000.00 in full settlement of any and all claims he may have against defendant. Plaintiff Lillie Faye Hall waives and releases any and all claims that she may have against defendant.

## XX

### ATTORNEYS' FEES AND EXPENSES

Defendant agrees to pay the attorneys for plaintiffs and the class a reasonable attorney fee. In the event the parties are unable to agree on a reasonable fee, this issue shall be presented to the Court for resolution.

### SIGNATURES AND APPROVAL

The provisions of this decree are agreed upon and consented to by the parties by and through their respective counsel.

FOR THE PLAINTIFFS:

/s/  Oscar W. Adams, III
Oscar W. Adams, III
/s/  Rose M. Sanders
Rose M. Sanders

FOR DEFENDANT:

/s/  Chris Mitchell
Chris Mitchell
/s/  Thomas H. Keene
Thomas H. Keene

The Court, having determined that the provisions of this decree represent a fair, adequate and reasonable compromise of the issues contested herein, does hereby approve this decree and orders that its provisions be implemented forthwith. The

clerk of the court is DIRECTED to notify counsel by telephone.

Done this 6th day of December, 1984.

/s/ Myron H. Thompson
United States District Judge