**Charlie HARRIS and Mose Batie, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Charles A. GRADDICK, in his official capacity as Attorney General of Alabama; et al., Defendants,**

**John W. Jones, Jr., as Judge of Probate of Dallas County, Alabama; et al., Defendant-Intervenors.**

Civ. A. No. 84–T–595–N.

United States District Court, M.D. Alabama, N.D.

Dec. 13, 1984.

James U. Blacksher, Larry T. Menefee, Blacksher, Menefee & Stein, Mobile, Ala., Delores Boyd, Mandell & Boyd, Terry Davis, Montgomery, Ala., Jack Greenberg, Lani Guinier, New York City, for plaintiffs.

Joseph E. Faulk, Troy, Ala., for Powell and Anderson.

Charles A. Graddick, Atty. Gen., Susan McKinney, Algert S. Agricola, James Callen Sparrow, Asst. Atty. Gen., Montgomery, Ala., for Stone, Graddick & Wallace.

Edward Still, Birmingham, Ala., for State Democratic Exec. Committee.

Edwin A. Strickland, R. Clifford Fulford and Max C. Pope, Fulford, Pope & Natter, Birmingham, Ala., for Jefferson County— Probate Judge, Circuit Clerk & Sheriff.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

On August 1, 1984, the court issued a preliminary injunction in this cause requiring that the appointing authorities for all but one of Alabama's 67 counties appoint more black persons as poll officials for all primary, general and special elections. *Harris v. Graddick*, 593 F.Supp. 128 (M.D. Ala.1984). The cause is now again before the court on the appointing authority for Jefferson County's October 30, 1984, motion to dissolve or modify the court's preliminary injunction. The court held a hearing on this motion on November 13, 1984.

### I.

In a memorandum opinion accompanying the August 1 injunction, the court began with an eye to history. The court stated that "[t]he past reality in Alabama has been that black citizens of the state were not only prohibited from participating in the political process, they were taught that this was the rule of law and society, the transgression of which merited severe punishment." 593 F.Supp. at 133. The court also found that it could not be blind to the present, pervasive effects of Alabama's past. The court stated that

The evidence now before the court dramatically and persuasively reflects that many blacks, in particular the elderly and uneducated, still labor under these past memories of personal humiliation, intimidation and violence. They understandably still harbor strong fears of entering all-white public places, even though they are now legally entitled to do so. They find the simple act of registering and voting, especially when the

voting officials are all white, an extremely intimidating experience; and as a result, many of them do not register, and many of those who do register do not vote.

593 F.Supp. at 131.

In at least one respect, however, the court saw that the effects of Alabama's discriminatory legacy can be addressed straightforwardly and satisfactorily. The court found that "[t]he open and substantial presence of black poll officials, according to the evidence, is a significant indication to many black persons that voting places are now open to all, that black persons not only have a legal right to come and vote, *they are welcome*." *Id.* (emphasis in original) Nevertheless, as the court found, those in authority in Alabama today have not chosen the path of progress from the state's regrettable past. Instead, the evidence reflected that "across the state black persons are grossly underrepresented as poll officials." *Id.*

These facts supported the court's preliminary conclusion that the failure to appoint black persons as poll officials throughout Alabama has impeded and impaired the access of many black persons to the political process, in violation of section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973 (West Supp.1983). *Id.* at 133. Accordingly, the court entered a preliminary injunction requiring that appointing authorities across the state substantially increase the number of black poll officials.

## II.

The results of the court's injunction have been largely encouraging. The reports filed by appointing authorities after the November 6, 1984, election demonstrate considerable compliance with the requirements for appointment of black persons as poll officials. There is also an absence of complaints from the responsible appointing authorities of any great inconvenience or burden. In only a few cases has the court found reason for renewed scrutiny. One such case is that of the Jefferson County appointing authority.

By its October 30, 1984, motion, the Jefferson County appointing authority seeks to free itself from the court's preliminary injunction in whole or in part. It contends, first, that there is no evidence of discriminatory purpose or effect in its appointment of poll officials, and therefore the injunction should not apply to it. Alternatively, it contends that the terms of the injunction should be modified to correspond to certain demographic features of Jefferson County, one of Alabama's most densely populated counties, with many more legislative districts than most others. The Jefferson County appointing authority wishes the court to order that black persons be appointed as poll officials in future elections according to the percentage they represent in each legislative district, rather than according to the county-wide proportion.

Not only do these alternative contentions presented by the motion lack merit, the evidence in support of the contentions reflects conduct of such an intolerable nature that immediate and further preliminary injunctive relief specially directed at the Jefferson County appointing authority is warranted.

## III.

The basis for the motion is apparent from the evidence: to avoid the appointment of black poll officials with supervisory authority at polling places where the majority of the voters are white. The Jefferson County appointing authority maintains that white voters at these polling places will not accept a black supervising poll official. George R. Reynolds, probate judge of Jefferson County and a member of its appointing authority, testified as follows:

A. Where you got 75 percent of the voters are white and you are going to throw them in a black chief inspector, you are all asking for something, or somebody is that don't make sense. And I can't get re-elected with that

kind of program, I will just tell you like it is.

Q. I see. They would vote against you when you ran for office next time?

A. You damn right. Man, these folks campaign fiercely against your party. People that are primarily working at the polls are the most biased, prejudiced, politically affiliated people in the world and they are the ones that go out and make three or four thousand phone calls every election.[1]

Reynolds further testified that

even if [the white chief inspector and assistant inspector] both died tomorrow, if that's a predominantly white box ... then, man, the people in that area ain't going to stand for me appointing some black to run the voting place when the blacks are the minority at that box.[2]

Reynolds then concluded that the appointment of black poll officials according to the black population in each legislative district rather than the county as a whole would allow the Jefferson County appointing authority to perpetuate the above racially-inspired scenario. He stated:

Well, if they modify the order and make it by legislative district, we got no problem because they have got 95 percent of the poll officials in the black legislative districts already, ain't no problem.[3]

The appointing authority for Jefferson County thus seeks by its motion to have this court validate its intentionally discriminatory practice of not appointing black poll officials with supervisory authority at majority white polling places.

The lack of merit in the Jefferson County appointing authority's motion is self-evident and requires little discussion. Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973 (West Supp. 1983) "prohibits not only official action taken or maintained for a racial discriminatory *purpose*, it prohibits any official action that *results* in the impairment or denial of the right of any citizen on account of race." *Harris v. Graddick*, 593 F.Supp. at 132 (emphasis in original). In the prior injunction and opinion in this cause, the court did not reach the issue of whether the present appointing authorities across the state had intended discrimination by appointing disproportionately few black persons as poll officials, since the effect of this practice alone was illegal under section 2. 593 F.Supp. at 132–33. In Jefferson County's case, however, the evidence is clear and unequivocal that the county appointing authority has denied and seeks to continue to deny persons an opportunity to serve as poll officials simply because they happen to be black. The authority's conduct constitutes a vestige of Alabama's insidious past in its most resistant strain. A finding of intentional discrimination is unavoidable.

This court cannot and will not tolerate the racially discriminatory practice of the appointing authority for Jefferson County. The court will therefore not only deny the authority's motion to dissolve and modify this court's previous preliminary injunction,[4] it will enter an additional preliminary injunction prohibiting the authority from intentionally discriminating against the black citizens of this state in the appointment of poll officials.[5]

---

**1.** Reynolds's deposition of November 7, 1984, pp. 27–28.

**2.** *Id.*, p. 32.

**3.** *Id.*, pp. 36–37.

**4.** The court's finding today of intentional discrimination by the Jefferson County appointing authority is also an alternative basis for the preliminary relief granted by the court on August 1, 1984, as to the Jefferson County appointing authority.

**5.** The Jefferson County appointing authority also argues that this court's August 1 preliminary injunction prohibits the appointment of white poll official with supervisory authority at majority black polling places. There is nothing in any injunction, order or opinion of this court that prohibits the appointment of white poll officials of all ranks at majority black polling places and the appointment of black poll officials of all ranks at majority white polling places.

Furthermore, in view of the obvious lack of merit in the argument made by the Jefferson

## IV.

Finally, in view of the evidence before the court, a few additional comments are appropriate. In a democratic society, public officials occupy a high trust. They undertake to uphold society's moral standard, not bow to its basest biases. They take an oath to enforce the law of the land, and the law of the land is clear: intentional discrimination on the basis of race in the appointment of poll officials is illegal. That public officials today would practice open and intentional discrimination of the kind now evidenced before the court is lawless and inexcusable. That these officials would try to excuse the practice under cover of the purported intolerance of their own constituents is indefensible and repugnant.

An appropriate order will be entered.

### ORDER AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the appointing authority for Jefferson County's October 30, 1984, motion to dissolve or modify the court's preliminary injunction of August 1, 1984, be and it is hereby denied; and

(2) That the members of the appointing authority for Jefferson County—O.H. Florence, George R. Reynolds, Polly Conradi, and Melvin Bailey—be and each is hereby ENJOINED and RESTRAINED from intentionally discriminating against black persons in the appointment of poll officials.

The United States Marshal is DIRECTED to serve copies of this order and injunction and accompanying memorandum opinion personally upon the members of the appointing authority for Jefferson County.

The clerk of the court is DIRECTED to mail copies of this order and injunction and accompanying memorandum opinion to all parties and all members of the defendant class.

County appointing authority, the court is compelled to add that it will countenance neither covert nor overt efforts designed to avoid or

delay full and immediate compliance with the orders and injunctions of the court and the law of this land.