Charlie HARRIS and Mose Batie, indi-
vidually and on behalf of all others
similarly situated, Plaintiffs,

v.

Charles A. GRADDICK, in his official
capacity as Attorney General of
Alabama; et al., Defendants,

John W. Jones, Jr., as Judge of Probate
of Dallas County, Alabama; et al.,
Defendant-Intervenors.

Civ. A. No. 84–T–595–N.

United States District Court,
M.D. Alabama, N.D.

July 19, 1985.

James U. Blacksher, Larry T. Menefee, Blacksher, Menefee & Stein, Mobile, Ala., Delores Boyd, Mandell & Boyd, Terry Davis, Montgomery, Ala., Jack Greenberg, Lani Guinier, New York City, for plaintiffs.

Joseph E. Faulk, Troy, Ala., for Powell and Anderson.

Charles A. Graddick, Atty. Gen., Susan McKinney, Algert S. Agricola, James Callen Sparrow, Asst. Atty. Gen., Montgomery, Ala., for Stone, Graddick & Wallace.

Edward Still, Birmingham, Ala., for State Democratic Exec. Committee.

Edwin A. Strickland, R. Clifford Fulford and Max C. Pope, Fulford, Pope & Natter, Birmingham, Ala., for Jefferson County— Probate Judge, Circuit Clerk & Sheriff.

MYRON H. THOMPSON, District Judge.

### ORDER

This statewide class action lawsuit challenging the practices for the appointment of poll officials in the State of Alabama as racially discriminatory is before the court on a May 2, 1985, motion to approve settlement filed by all parties except defendants Charles A. Graddick and George C. Wallace. For reasons that follow, the court concludes that the motion should be granted and the settlement approved.

### I.

Plaintiffs Charlie Harris and Mose Batie, black citizens residing in Pike County, Alabama, brought this lawsuit against defendants Attorney General Charles A. Graddick, Governor George C. Wallace, the State Democratic Executive Committee, and the appointing authority of Pike County. The complaint alleged that state and county officials throughout Alabama have appointed disproportionately too few black persons as poll officials in violation of, among other things, section 2 of the Voting Rights Act of 1965, as amended, 42 U.S. C.A. § 1973 (West Supp.1985). Harris and Batie sought certification of both plaintiff and defendant classes and preliminary and permanent injunctive relief.

On August 1, 1984, this court issued a preliminary injunction requiring that all but one of Alabama's sixty-seven county appointing authorities appoint more black persons as poll officials. *Harris v. Graddick*, 593 F.Supp. 128 (M.D.Ala.1984) (*Harris I*). The court also certified, pursuant to Fed.R.Civ.P. 23(a) & (b)(2), a plaintiff class of all black citizens in Alabama and a defendant class of all county appointing authorities in Alabama except the one ex-

cluded from the preliminary injunction.[1] The plaintiff class is represented by Harris and Batie and the defendant class is represented by the Pike County appointing authority. 593 F.Supp. at 136–37. The court later excused another county appointing authority from the preliminary injunction and the defendant class.[2]

In a memorandum opinion accompanying the August 1 order, the court focused on Alabama's history of widespread discrimination against black persons, enforced by state and local governments. 593 F.Supp. at 130–31, 133. The court noted that this history is not without its modern-day manifestations. As the court found, black persons in Alabama continue to consider voting to be an intimidating experience, especially when the voting officials are all white. *Id.* Nevertheless, those in authority have grossly failed to appoint black persons as poll officials even though, as the evidence indicated, the presence of black poll officials does much to remedy the intimidation of black voters. *Id.* The court determined that the "effect" of this practice violated section 2 of the Voting Rights Act of 1965. *Id.*

After the court's August 1 order, the appointing authorities for Jefferson County and Dallas County intervened as defendants. On October 30, 1984, the Jefferson County appointing authority moved to dissolve or modify the injunction as applied to it. The court denied this motion on December 13, 1984. *Harris v. Graddick,* 601 F.Supp. 70 (M.D.Ala.1984) (*Harris II*). The court found that the Jefferson County appointing authority had intentionally discriminated on the basis of race in appointing poll officials, in violation of section 2, and the court preliminarily enjoined such further conduct. 601 F.Supp. at 73, 74.

The trial of this cause on the plaintiffs' request for permanent injunctive relief began on February 4, 1985, but was recessed before its conclusion. Before it resumed, all the parties except Graddick and Wallace informed the court that they had reached a settlement in the form of a consent decree. On May 2, 1985, they filed a joint motion to approve settlement, and on May 16, 1985, the court preliminarily approved the proposed consent decree. As preliminarily approved, the proposed decree provided for notice to members of the plaintiff class and defendant class, an opportunity for such members to present any objections to the settlement and an opportunity for members of the defendant class to opt out of the settlement and participate in the trial along with Graddick and Wallace.

On May 3, 1985, Graddick and Wallace filed objections to the proposed consent decree, and on May 31, 1985, the appointing authority for Mobile County filed an objection. No appointing authorities opted out of the settlement. On June 14, 1985, the court held a hearing on the joint motion to approve settlement and the objections to the settlement. At this hearing, the settling parties and the court agreed to an amendment of the decree as suggested by the objection filed by the Mobile County appointing authority.

## II.

Courts have often expressed a judicial policy favoring settlement as the means of resolving class action lawsuits. *See, e.g., Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984); *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir.1983). However, "[b]ecause of the potential for a collusive settlement, a sellout of a highly meritorious claim, or a settlement that ignores the interests of minority class members, the district judge has a heavy duty to ensure that any settlement is 'fair, reasonable and adequate'...." *Piambino v. Bailey,* 757 F.2d 1112, 1139 (11th Cir.1985). The district judge also has

---

**1.** The Conecuh County appointing authority was excluded because it had already entered into a consent decree in another district court regarding the issue raised by this lawsuit. *Harris I,* 593 F.Supp. at 137 n. 10.

**2.** The Winston County appointing authority was later excused because the evidence showed that, over the years, it had met the requirements set by the preliminary injunction.

a duty to ensure that the settlement is not illegal or against public policy. *United States v. City of Alexandria,* 614 F.2d 1358, 1362 (5th Cir.1980).

### A.

■ Here, the plaintiffs have obtained agreement to an injunction lasting until December 31, 1988, that sets specific requirements for the increased appointment of black persons as poll officials throughout Alabama. Compliance with the injunction is insured by mandatory, detailed record keeping and the opportunity for renewed judicial scrutiny if necessary. Thus, the members of the plaintiff class will receive the full relief that their representatives sought for them.

Graddick and Wallace have suggested that the settlement ignores members of minority groups other than black persons. However, Graddick and Wallace have failed to identify any such other minority groups whose interests the settlement might implicate, and they have not throughout the course of this litigation sought to join any members or representatives of such groups under Fed.R.Civ.P. 19 or 20.

For their part, the members of the defendant class and their representatives will avoid additional litigation and a finding of liability whose likelihood the court necessarily indicated in ordering the preliminary injunctions. *See Harris II, supra; Harris I,* 593 F.Supp. at 132–35. Also, there has been no evidence that compliance with the requirements of the preliminary injunction, which the settlement largely extends, has proved in any way onerous to any of the appointing authorities. *Harris II,* 601 F.Supp. at 72; *Harris I,* 593 F.Supp. at 135–36. Throughout the course of this litigation, the appointing authorities have had several opportunities to indicate any difficulties with compliance and even to intervene as parties. All but two chose to rely on their class representative, and these two now join in the settlement.

Graddick and Wallace contend that one provision of the proposed consent decree misleads members of the defendant class regarding the opportunity to exercise the "bail-out" provisions of section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973b (West Supp.1985). In light of this objection, the court amended the proposed notice to members of the defendant class to indicate Graddick and Wallace's objections to certain provisions of the proposed consent decree and to advise any defendant class members to consult them for an explanation of these objections. Having learned of Graddick and Wallace's contention regarding the "bail-out" provision, any defendant class member could have objected to or opted out of the settlement on this basis. None did so. Furthermore, the court does not find the pertinent provision of the proposed consent decree to be misleading.

■ Finally, in assessing whether a proposed settlement is fair, reasonable and adequate, "[t]he trial court is entitled to take account of the judgment of experienced counsel for the parties." *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1215 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). Here, counsel for all parties seeking settlement unanimously and emphatically concur that the settlement meets this requirement.

In light of the vigor and skill of their representation in this litigation and based on the court's own independent assessment of the settlement, the court finds the settlement to be fair, reasonable and adequate for both the plaintiff class and the defendant class. *See, e.g., Johnson v. Montgomery County Sheriff's Department,* 604 F.Supp. 1346 (M.D.Ala.1985); *Lurns v. Russell Corporation,* 604 F.Supp. 1335 (M.D.Ala.1984).

### B.

Graddick and Wallace contend that the settlement exceeds the requirements and indeed violates the provisions of section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973 (West Supp. 1985). They contend that the proposed con-

sent decree establishes illegal "quotas." The decree contains several provisions providing, in general, that the failure of a county appointing authority to appoint black persons as poll officials in sufficient numbers to correspond proportionately to the number of black persons in the county population constitutes *prima facie* proof of violation of the decree.

█ Race-conscious relief is appropriate in a consent decree if the relief is necessary, reasonable, and otherwise appropriate under the circumstances. *United States v. City of Miami*, 664 F.2d 435 (5th Cir. Dec. 3, 1981) (Former 5th en banc); *United States v. City of Alexandria*, 614 F.2d 1358 (5th Cir.1980). *See also Palmer v. District Board of Trustees of St. Petersburg Junior College*, 748 F.2d 595, 600–601 (11th Cir.1984). Here, the race-conscious requirements in the proposed consent decree are necessary. This court has previously found that the underrepresentation of black persons as poll officials "is substantially impeding and impairing the access of many black persons to the political process," *Harris I*, 593 F.Supp. at 133; and that without immediate, affirmative, race-conscious measures this intolerable condition will not end within the near future. 593 F.Supp. at 135.

The requirements are also reasonable. They are specifically tailored to redress the present effects of past discrimination, but they do "not unnecessarily trammel" the interests of white citizens of the state. *United Steelworkers of America v. Weber*, 443 U.S. 193, 208–09, 99 S.Ct. 2721, 2730, 61 L.Ed.2d 480 (1979). Under the decree, not only will white persons continue to serve as poll officials, they will more than likely continue by a large margin to be a majority of poll officials. Moreover, the requirements are but a temporary measure, designed not to maintain a racial balance, but to eliminate a manifest vestige of Alabama's regrettable past; the provisions of the decree will remain in force only until December 31, 1988. Finally, as already noted, the requirements, "while significant, will not disrupt or unreasonably burden the state and county political process." *Harris I*, 593 F.Supp. at 135.

Graddick and Wallace also contended that the U.S. Department of Justice should preclear the settlement pursuant to section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c. *See McDaniel v. Sanchez*, 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981). However, in their letter brief filed on July 8, 1985, they have clarified that they do not contend that preclearance is necessary before the court may approve the proposed consent decree. Rather, they contend that should any member of the defendant class change its voting procedures in order to comply with the consent decree it may be necessary for such change to be precleared pursuant to section 5. The court agrees with Wallace and Graddick's clarified position that this issue, should it arise, should be left for another day.

### III.

█ Graddick also challenges the authority of the Pike County appointing authority, as representative of the defendant class, to enter into the settlement. Graddick is not only a party to this lawsuit, he is also the attorney for the circuit court clerk of Pike County, one of the three members of the Pike County appointing authority. The other two members are represented by private counsel. Each county appointing authority is composed of the county probate judge, the county sheriff, and the clerk of the circuit court of the county. 1975 Ala.Code § 17–6–1.

At least two members of the Pike County authority have decided to settle this lawsuit. Since the members of a county appointing authority act as a body by majority vote, any action taken by these two members acting together would constitute the action of the authority. 1975 Ala.Code § 17–6–1. These two members therefore have the authority to settle this lawsuit on behalf of the Pike County appointing authority and the defendant class represented by the authority.

## IV.

Finally, there is the matter of the amendment of the proposed consent decree to meet the objection of the appointing authority of Mobile County. This appointing authority, the only member of the defendant class to object to the settlement, raises a limited objection to one provision of the proposed consent decree: the requirement that appointing authorities record and report the race of registered voters after the primaries scheduled for 1986. The objection suggests that the Mobile County appointing authority be permitted to supply this information by alternative means if necessary. In light of the settling parties' agreement to amend the proposed consent decree, the issue for the court is whether members of the plaintiff class and defendant class, certified pursuant to Fed.R.Civ.P. 23(a) & (b)(2), must be notified of the amendment. Fed.R.Civ.P. 23(e) generally requires notice to all class members when a class action is compromised or settled. However, "[i]n a Rule 23(b)(2) class action, mechanics of the notice process are left to the discretion of the district court subject only to the broad 'reasonableness' standard imposed by due process." *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1058 (5th Cir.1979); *see also Marcera v. Chinlund*, 595 F.2d 1231, 1240 n. 13 (2d Cir.), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979) (same for notice to defendant class). Since the members of the plaintiff class and defendant class have already received notice of the proposed consent decree, the issue for the court is whether declining to require additional notice to members of the plaintiff class and defendant class would be reasonable. The court finds that it would.

The amendment to the proposed consent decree is extremely narrow. It applies only to the appointing authority of Mobile County and simply permits it to use means other than actual records of the race of registered voters to make the reports required by the proposed consent decree, and this only for a limited period of time if necessary. The court credits plaintiff class counsel's representation that the interests of the plaintiff class are in no way impaired by the amendment. It also appears that few if any other appointing authorities face the same possible difficulty with record keeping as Mobile County's which currently is involved in litigation regarding this very matter. Any such other appointing authorities had the same opportunity as Mobile County's to object to the settlement on such grounds. None did so.

Under these limited circumstances where the amendment is narrow and it is clearly apparent that the interests of the classes are not substantially impaired, the court is of the opinion that the notice already given is adequate and that additional notice is not required pursuant to Rule 23(e).

## V.

The court therefore concludes that the proposed consent decree, as amended, offers a settlement that is fair, reasonable and adequate to all participating and is not illegal or against public policy.

Accordingly, it is ORDERED that the May 2, 1985, motion to approve settlement, filed by plaintiffs Charlie Harris and Mose Batie, defendants State Democratic Executive Committee of Alabama and the appointing authority for Pike County, and defendant-intervenors appointing authorities of Jefferson County and Dallas County, be and it is hereby granted to the extent that the proposed consent decree, as amended, and the settlement it contains are approved. The approved consent decree is attached.

The clerk of the court is DIRECTED to mail copies of this order and the consent decree by certified mail, return receipt requested, to the members of the appointing authorities of all counties in the State of Alabama except Conecuh County and Winston County.

## CONSENT DECREE

This cause is before the Court on the joint motion of the Plaintiffs and the Defendant appointing authorities of the counties of Pike, Jefferson and Dallas and the

State Democratic Executive Committee (hereinafter referred to as "settling Defendants") to approve their settlement of this action. Plaintiffs Charlie Harris and Mose Batie filed their complaint on April 30, 1984, against Charles A. Graddick, Attorney General of the State of Alabama, George C. Wallace, Governor of Alabama, the State Democratic Executive Committee of Alabama, the Pike County Appointing Board comprised of Ronald L. Powell, William C. Stone, and Harold Anderson to enforce the provisions of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. sec. 1973, and the thirteenth, fourteenth, and fifteenth amendments to the Constitution of the United States. The complaint alleges that the Defendants have engaged in racial discrimination against black voters at polling places, and that the adoption and maintenance of procedures for the selection of poll officials has resulted in impairing and impeding the voting rights of black citizens in Alabama. Defendants denied these allegations. On July 9, 1984, this Court received submissions from the parties on a Preliminary Injunction concerning the selection of poll officials for the remaining 1984 elections. On August 1, 1984, this Court ordered that this action was properly maintainable as a class action with respect to both a Plaintiff and Defendant class. The Court provisionally certified a Plaintiff class of all black citizens of the State of Alabama and a Defendant class of all the appointing authorities in every county in the State of Alabama, except Conecuh and Winston counties, that is, the probate judge, circuit clerk and sheriff of each county. The court further issued the Preliminary Injunction. The appointing boards of Dallas and Jefferson Counties were granted leave to intervene as named Defendants.

On February 4, 1985, this Court began hearing evidence on the trial of this cause. Plaintiffs presented their case and Defendants had begun the presentation of their case. The hearing lasted five days and was then recessed.

At the request of the Court during recess, and desiring to avoid the burden and expense of further contested litigation in this action, the Plaintiffs and the settling Defendants have negotiated a settlement of Plaintiffs' claims against the settling Defendants.

The Court has jurisdiction over the Plaintiffs and the settling Defendants and the subject matter of this action. This Decree is final and binding between the parties to this settlement and their successors regarding the issues raised in the Complaint and resolved herein. Upon due consideration, the Court is of the opinion that the provisions of this Decree are equitable, just, and in accordance with the Constitution and laws of the United States, and that it ought to be approved.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

A. The preliminary injunctions entered August 1, 1984, and December 13, 1984, are hereby modified and amended as provided in the following paragraphs B through J, and are continued in force and effect until December 31, 1988, and the memorandum opinion of December 13, 1984, is hereby withdrawn as it pertains to the settling Defendants.

B. (1) The settling Defendants and members of the Defendant class, their successors, officers, agents, attorneys, employees and those acting in concert with them or at their direction are enjoined from appointing poll officials in any manner which will have the purpose or effect of discriminating against black persons on account of race.

(2) With regard to all appointments of poll officials in countywide elections prior to January 1, 1989, the failure of the settling Defendants and Defendant class members to appoint in their respective counties a proportion of black poll officials equal to or greater than the proportion of black persons in the voting age population of the county as shown in the 1980 census shall be deemed *prima facie* proof of non-compliance with paragraph B(1).

(3) With regard to all appointments of poll officials prior to January 1, 1989, the

failure of the settling Defendants and Defendant class members to appoint for any polling place a proportion of black poll officials within five percent of the percentage of black registered voters assigned to that polling place as of a date no more than 30 days in advance of the election or primary, or to appoint at least one black poll official in any polling place where black persons constitute 20% or more of the registered voters assigned to that polling place, shall be deemed *prima facie* proof of noncompliance with paragraph B(1).

C. (1) The settling Defendants and members of the Defendant class, their successors, officers, agents, attorneys, employees and those acting in concert with them or at their direction are enjoined to appoint a sufficient number of black poll officials to prevent discrimination on the basis of race against voters.

(2) With regard to all appointments of poll officials prior to January 1, 1989, the number of black poll officials necessary to establish *prima facie* compliance with paragraph (C)(1) will be the number yielding (a) in each county, in countywide elections, a proportion of black poll officials equal to or greater than the proportion of black persons in the voting age population of that county as shown in the 1980 census, and (b) for each polling place, a proportion of black poll officials within five percent of the proportion of black registered voters assigned to that polling place on a date no more than 30 days in advance of the election or primary, and in any event no less than one black poll official in any polling place where black persons constitute 20% or more of the registered voters assigned to that polling place.

(3) If any settling Defendants or members of the Defendant class believe that the number of black poll officials necessary in any particular county to eliminate the discrimination referred to in paragraph C(1) is different than the number in paragraph C(2), they may apply to the Court for an appropriate order.

D. (1) The settling Defendants and members of the Defendant class, their suc-

cessors, officers, agents, attorneys, employees and those acting in concert with them or at their direction are enjoined from appointing chief inspectors, inspectors, chief clerks, managers, returning officers and officers by other name in any manner which will have the purpose or effect of discriminating against black persons on account of race.

(2) With regard to all appointments of such officers prior to January 1, 1989, the failure of the settling Defendants and Defendant class members to appoint in any county, in a countywide election, a proportion of black officers equal to the proportion of black persons in the voting age population of that county as shown in the 1980 census shall be deemed *prima facie* proof of noncompliance with paragraph D(1).

(3) It is recommended that persons appointed as chief inspector have experience as a poll official in one prior election. In evaluating prior experience, Defendants may consider previous service as a poll official, previous political campaign experience or other experience in the electoral process. Experience as a poll official in one prior election shall be presumed sufficient for appointment as chief inspector. Provided however, nothing contained herein shall be considered as an excuse for failure to meet the requirements of this Decree.

E. To the extent necessary to meet the above requirements regarding the appointment of black poll officials, county appointing authorities may appoint poll officials from sources other than those authorized by state law.

F. The settling Defendants and the members of the Defendant class of appointing boards shall file a report with the Clerk of this Court 7 days before each election in which the settling Defendants appoint poll officials. For the purposes of this Decree, the Plaintiffs agree that the settling Defendants and Defendant class members shall not be expected to supply to the Plaintiffs or the Court the race designation for registered voters pursuant to sec. 17–4–

187, Alabama Code (Supp.1984), until the primaries scheduled for 1986, unless those data are currently available. The Plaintiffs further agree during the term of this Consent Decree that should Mobile County be unable to supply race designations for registered voters pursuant to sec. 17–4–187, Alabama Code (Supp.1984), because the Mobile County Board of Registrars does not have complete or accurate data, then, so long as they are making good faith efforts to identify the race of voters from available sources, Mobile County shall be allowed to supply race designations for registered voters by means of statistical estimates, polling, sampling, and the use of sources other than records maintained by the Board of Registrars, but the incomplete race designations by the Board of Registrars shall also be supplied. Subject to the above, each report shall provide the following information:

G. For each county, the report shall contain: names of all offices (*e.g.*, chief inspector, chief clerk, returning officer, etc.), the total number and percent of blacks and whites appointed to each such office, the number and percent of black and white registered voters countywide as of a date no more than 30 days in advance of the election or primary for which the report is being prepared, the number and percent of white and black total population and voting-age population countywide as shown in the 1980 census.

H. For each polling place within the county, the report shall contain: the name and numerical designation of the polling place, the House and Senate districts, the total number and percent of poll officials by race, the total number and percent of registered voters by race as of a date no more than 30 days in advance of the election or primary for which the report is being prepared. For any polling place where the percentage of black poll officials does not reasonably correspond to the percentage of black registered voters, those Defendants must give a short explanation for the reason.

I. Furthermore, there shall be appended to such report a list by polling place of the name, address, race designation, and office of all polling officials for such election. For the convenience of the reporting officials, a suggested form for such report is appended hereto as Appendix A. A copy of each report shall also be mailed by the Defendant class member at least 7 days before election upon James U. Blacksher, Esquire and Larry T. Menefee, Esquire, Blacksher, Menefee & Stein, P.A., 405 Van Antwerp Building, P.O. Box 1051, Mobile, Alabama 36633, attorneys for the Plaintiff class.

J. Notwithstanding the foregoing provisions, the State Democratic Executive Committee is enjoined only to give notice to each of its county committees within 20 days of the date hereof by sending a copy of this decree to each committee.

K. This preliminary injunction shall continue in force until December 31, 1988. At that time, all of Plaintiffs' claims against the settling Defendants shall be dismissed, unless, by motion filed on or before December 31, 1988, Plaintiffs show that particular settling Defendants have not complied substantially with the preliminary injunction. If such motion is filed, the Court will order said settling Defendants to show cause why Plaintiffs should not be allowed to pursue their claims against said settling Defendants to final judgment. Following a hearing thereon, the Court shall either dismiss the claims against the particular settling Defendants or schedule a trial on the merits with respect to Plaintiffs' claims against them.

L. From the inception of this lawsuit, Plaintiffs have taken the position that it is the State of Alabama, acting through the Governor and its Attorney General, that ultimately is responsible for seeing that the federal voting rights of the plaintiff class are protected and enforced throughout its political subdivisions. Consequently, Plaintiffs have contended that their attorneys' fees and expenses for prosecuting this action should be the responsibility of the State Defendants, and that Plaintiffs

should not have to bear the burden of litigating the extent to which any of the county Defendants or Defendant class members should contribute to their fees and expenses. Accordingly, the settling Defendants agree that Plaintiffs are the prevailing parties. Plaintiffs agree that they will seek to recover their attorneys' fees and expenses from the state Defendants and will not request an award of attorneys' fees and expenses against the Pike County or Dallas County Defendants or against members of the Defendant class or against the State Democratic Executive Committee except to the extent of services rendered seeking enforcement of the preliminary injunction against particular settling Defendants or pursuit of claims against them after the preliminary injunction is dissolved. However, if the Court orders these Defendants or class members to share Plaintiffs' attorneys' fees or expenses as a result of any claim by one or both of the state Defendants, Plaintiffs do not waive their right to demand payment of same from these county Defendants or class members.

M. Consistent with the provisions of the preceding paragraph, Plaintiffs agree that they will not request an award of attorneys' fees and expenses against the Jefferson County Defendants, except to the extent of fees and expenses incurred opposing matters that were raised exclusively by Jefferson County, pursuing enforcement of the preliminary injunction against Jefferson County or pursuing claims against said Defendants after the preliminary injunction has been dissolved. However, if the Court orders the Jefferson County Defendants to pay a greater share of Plaintiffs' attorneys' fees and expenses as a result of any claim by the state Defendants, Plaintiffs do not waive their right to demand payment of same from the Jefferson County Defendants.

N. This Consent Decree shall not constitute an adjudication of or admission by any settling Defendants or class members of any violation of Plaintiffs' federal statutory rights or constitutional rights, nor shall it operate to preclude any members of the Defendant class from utilizing the provisions set forth in Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. sec. 1973b. In this respect, the parties agree that this Consent Decree will not result in any abandonment of a voting practice challenged in this action.

## APPENDIX A

Report of _____ County

_____ ____, 19____

Section I

County Totals: 1980 census total total population _____ _____%

black population _____ _____%

1980 census total voting-age population _____ _____%

black voting-age population _____ _____%

Total registered voters as of ___/___/ 8 _____ _____%

Total black registered voters as of ___/___/ 8 _____ _____%

Total poll officials

white poll officials _____ _____%

black poll officials _____ _____%

other _____ _____%

| | Total | White | | Black | |
|---|---|---|---|---|---|
| Returning Officer | _____ | _____ | ___% | _____ | ___% |
| Chief Inspector | _____ | _____ | ___% | _____ | ___% |

| | | | | | |
|---|---|---|---|---|---|
| Inspector | _____ | _____ | ___% | _____ | ___% |
| Supervisor | _____ | _____ | ___% | _____ | ___% |
| Manager | _____ | _____ | ___% | _____ | ___% |
| Chief Clerk | _____ | _____ | ___% | _____ | ___% |

Section II

For Each Polling Place

Name: _____
Senate District: _____
House District: _____
Precinct, Ward or Box designation: _____

| | Total | White | | Black | |
|---|---|---|---|---|---|
| Registered Voters | _____ | _____ | ___% | _____ | ___% |
| (___/___/8___) | | | | | |
| Poll Officials | _____ | _____ | ___% | _____ | ___% |

Explanation for non-compliance:

_____

Name: _____
Senate District: _____
House District: _____
Precinct, Ward or Box designation: _____

| | Total | White | | Black | |
|---|---|---|---|---|---|
| Registered Voters | _____ | _____ | ___% | _____ | ___% |
| (___/___/8___) | | | | | |
| Poll Officials | _____ | _____ | ___% | _____ | ___% |

Explanation for non-compliance: